GUNTER HARZ SPORTS, INC., formerly Werner Fischer Sports, Inc., of America, Appellant,

v.

UNITED STATES TENNIS ASSOCIATION, INC., Appellee.

No. 81–1539.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1981.

Decided Dec. 2, 1981.

James W. Lillie, New York City, Jon Baughman argued, Barbara W. Mather M.

Duncan Grant, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Intern. Tennis Federation.

Michael L. Schleich argued, Morsman, Fike, Davis & Schumacher, P. C., Omaha, Neb., for appellant.

Francis Matthews and Stephen L. Gerdes argued, Matthews, Cannon & Riedmann, P. C., Omaha, Neb., for appellee, U. S. Tennis.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* Chief Judge.

## PER CURIAM.

This matter involves a rule of the United States Tennis Association (USTA) which effectively prohibits the use of a certain tennis racket in sanctioned tournaments. The manufacturer of the racket, Harz Sports, brought an antitrust action against the USTA. The district court[1] ruled that the USTA is subject to the Sherman Act but, following a trial on the merits, found no antitrust violation, 511 F.Supp. 1103. We affirm.

The district court applied a thorough rule of reason analysis. Briefly, the court found that the USTA legitimately functions as a private, nonprofit regulating body to ensure that competitive tennis is conducted in an orderly fashion and to preserve the essential character of the game as played in organized competition. USTA regulation of racket characteristics is rationally related to these goals. Moreover, the court found that the particular rule at issue here does not extend beyond what is necessary to further such goals and provides adequate procedural safeguards to protect against arbitrary enforcement of the rule. These findings have substantial support in the record and we find no merit in the contrary assertions by Harz Sports.

The USTA does not dispute the district court's findings, but contends that it should not be subject to the antitrust laws in the first instance.[2] The International Tennis Federation, as *amicus curiae*, similarly argues against judicial involvement absent evidence of "extraordinary anticompetitive animus." We cannot agree. Antitrust regulation is proper when, as here, an association wields enormous economic clout by virtue of its exclusive control over the conduct of a major sport.[3] *See Mackey v. National Football League*, 543 F.2d 606 (8th Cir. 1976), *cert. denied*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). Nonprofit amateur sports associations also have been subject to antitrust regulation. *See, e. g., Hennessey v. National Collegiate Athletic Ass'n*, 564 F.2d 1136 (5th Cir. 1977). When an athletic association's action serves to protect fair competition in the game and does not involve improper collusion with commercial interests or "an agreement with business competitors in the traditional sense," courts have followed a rule of reason approach. *Id.* The district court here properly focused on the factors outlined in *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

In affirming the district court, we emphasize that the challenged USTA rule provides a procedure by which an interested party may obtain approval of a racket upon showing that its use will not "significantly change the character of the game." Whether this rule may be arbitrarily enforced in the future is a question not presently before us. We note simply that on its face, the rule provides adequate procedural safeguards.

* The Honorable PAUL BENSON, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

2. The USTA relies heavily on *Missouri v. National Organization for Women, Inc.*, 620 F.2d 1301 (8th Cir. 1980), *cert. denied*, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 49 (1981). That case, however, turned largely upon significant First Amendment concerns that are not present here.

3. Although the USTA does not manufacture or sell commercial goods, its actions may substantially influence the marketplace for products used in the sport.